NUNC PRO TUNC OPINION
{¶ 1} Defendants-appellants, Ohio Department of Job and Family Services ("ODJFS"),[1] and Ohio Department of Insurance ("ODI"), appeal from a judgment of the Court of Claims of Ohio granting the Civ.R. 23 motion for class certification filed by plaintiffs-appellees, The Association for Hospitals and Health Systems ("OHA"), Meridia Health System, Ohio State Medical Association ("OSMA"), Central Ohio Newborn Medical, Inc. ("CONM"), and Emergency Medical Physicians of Barberton, Ltd. ("EMP"). For the reasons that follow, we conclude that the trial court did not abuse its discretion in granting class certification. We, therefore, affirm the trial court's judgment.
 {¶ 2} This case arises out of the operation of an Ohio Medicaid program known as "OhioCare," which required certain Medicaid-eligible individuals to enroll in state-approved Managed Care Plans ("MCPs"). Personal Physical Care, Inc. ("PPC"), was an OhioCare-approved MCP. As such, PPC contracted with medical service providers for the provision of services to eligible Medicaid recipients. Under the OhioCare program, the state of Ohio paid participating MCPs, such as PPC, a set amount per month for each of their Medicaid-eligible enrollees. The MCPs, in turn, reimbursed the medical service providers on a fee basis for services rendered to their Medicaid-eligible members.
 {¶ 3} In late 1996, PPC became insolvent. PPC was placed into liquidation by ODI in August 1998. Plaintiffs are medical service providers who provided services to Medicaid recipients enrolled in PPC. Due to its insolvency, PPC has failed to reimburse plaintiffs for medical services they provided to PPC enrollees.
 {¶ 4} In their second amended complaint, plaintiffs alleged that defendants were negligent in performing their duties with respect to OhioCare. In particular, plaintiffs asserted that ODJFS agreed to be bound by and to operate OhioCare in accordance with numerous terms and conditions imposed by federal regulations governing Medicaid. Those terms and conditions included a requirement that ODJFS monitor the financial status of participating MCPs. Plaintiffs further alleged that ODI was obligated by R.C. Chapters 1751, 3901 and 3903 to collect certain financial information from MCPs and to examine that information in order to ensure the continued solvency of MCPs, and that ODI undertook a duty, pursuant to the OhioCare plan, to forward this financial information to ODJFS for its use in monitoring the financial health of participating MCPs.
 {¶ 5} In short, plaintiffs asserted that defendants negligently failed to monitor PPC's financial status, resulting in lost revenue to plaintiffs. Plaintiffs contended that absent this negligence, their losses would have been completely eliminated or at least significantly reduced, as PPC either would not have become insolvent or would have been removed from participation in OhioCare through non-renewal or termination of its contract before plaintiffs rendered the services to PPC members for which they have not been reimbursed. Plaintiffs further alleged that the effect of defendants' negligence was to shift to plaintiffs the state's burden and obligation to fund the OhioCare program with respect to PPC. Plaintiffs argued that this conduct constituted a taking of plaintiffs' property without compensation in violation of Section 19, Article I, of the Ohio Constitution.
 {¶ 6} Plaintiffs moved the court for an order pursuant to Civ.R. 23 permitting the case to proceed as a class action. Following extensive briefing, the parties agreed to certain stipulations and submitted written discovery responses and short affidavits into the record. According to the stipulations, approximately 1,200 hospital and medical service providers in Ohio have submitted claims in the common pleas court liquidation proceedings seeking reimbursement for hospital and medical goods or services allegedly provided to Medicaid recipients enrolled with PPC. Plaintiffs claim that the proposed class consists of these same 1,200 hospital and medical services providers.
 {¶ 7} Defendants filed motions for summary judgment on grounds that, as a matter of law, they owed no duty to plaintiffs in the absence of a special relationship. Following an oral hearing, the trial court found that genuine issues of material fact existed and that defendants were not entitled to judgment as a matter of law. Accordingly, the court overruled the motions for summary judgment.
 {¶ 8} Following a non-evidentiary hearing on plaintiffs' motion for class certification, the trial court, in its June 25, 2004 decision, granted certification of a class consisting of "those physicians, hospitals and medical providers who have provided medical services or goods to Medicaid recipients enrolled in a Medicaid managed care plan operated by Personal Physician Care, Inc. and who have not received payment for those goods or services." In so doing, the trial court found that all of the prerequisites of Civ.R. 23(A) had been met, i.e., identifiable class, class membership, numerosity, commonality, typicality, and adequacy of representation, and that plaintiffs satisfied Civ.R. 23(B)(3)'s predominance and superiority requirements.
 {¶ 9} Both ODJFS and ODI have timely appealed the trial court's judgment.
 {¶ 10} ODJFS advances a single assignment of error, as follows:
The trial court abused its discretion in granting class certification.
 {¶ 11} ODI asserts the following five assignments of error:
I. The trial court abused its discretion in failing to analyze any of the elements in the claims of negligence and unconstitutional taking.
II. The trial court abused its discretion in certifying a class after it previously found that there existed genuine issues of material fact as to special relationship/special duty.
III. The trial court abused its discretion in relying upon and finding the facts of Hamilton, et al. v. Ohio Savings Bank
(1998), 82 Ohio St.3d 67 controlling and determinative.
IV. The trial court abused its discretion in failing to perform a rigorous analysis as to whether the requirements of predominance and superiority were satisfied, as required by Civ.R. 23(B)(3).
V. The trial court abused its discretion in finding that plaintiffs had standing as class representatives.
 {¶ 12} As all the assignments of error raised by ODJFS and ODI generally assert that the trial court abused its discretion in granting plaintiffs' motion for class certification, we will address them together.
 {¶ 13} The party seeking to maintain a class action has the burden of establishing the certification requirements set forth in Civ.R. 23(A) and (B). Gannon v. Cleveland (1984),13 Ohio App.3d 334, 335, citing State ex rel. Ogan v. Teater (1978),54 Ohio St.2d 235, 247. Two implicit prerequisites to certification of a class action under Civ.R. 23(A) are: (1) that there be an unambiguous, identifiable class, and (2) that the class representatives be members of that class. In addition, Civ.R. 23(A) sets forth four explicit requirements that must be met before a class may be certified. The moving party must establish that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative party or parties will fairly and adequately protect the interest of the class. Hamilton v. OhioSav. Bank (1998), 82 Ohio St.3d 67, 71.
 {¶ 14} In addition, a party seeking class certification must show that the action conforms to at least one of the three categories of actions, as set forth in Civ.R. 23(B), that qualify for class treatment. Id. An action may be brought as a class action if: (1) a series of separate actions would create a risk of inconsistent adjudications or incompatible standard of conduct for the party opposing the class action; (2) injunctive relief would be an appropriate remedy for the entire class; or (3) common questions of law or fact predominate over questions involving only individual members of the class and class treatment is the superior method of resolving the controversy. Civ.R. 23(B)(3). A party seeking to maintain a class action satisfies its burden when it establishes that all the prerequisites of Civ.R. 23(A) are met and that at least one of the conditions of Civ.R. 23(B) exists. Id.
 {¶ 15} The trial court has broad discretion in determining whether a lawsuit may be maintained as a class action and that determination will not be disturbed absent an abuse of discretion. Id. at 70. An abuse of discretion connotes more than an error of law or judgment; it implies an unreasonable, arbitrary or unconscionable attitude on the part of the trial court. Marks v. C.P. Chem. Co., Inc. (1987), 31 Ohio St.3d 200,201.
 {¶ 16} The Staff Notes to Civ.R. 23 provide: "The basic effect of Rule 23 is to provide the trial judge with considerable flexibility and discretion in handling purported class actions. The rule provides him with detailed guidelines to assist him in this task." The basis for an abuse-of-discretion standard is the trial court's special expertise and familiarity with case-management problems and its inherent power to manage its own docket. Hamilton, supra, citing Marks, supra. Any doubts a trial court may have as to whether the elements of a class certification have been met should be resolved in favor of upholding the class. Baughman v. State Farm Mut. Ins. Co.
(2000), 88 Ohio St.3d 480, 487. The Supreme Court of Ohio has cautioned, however, that the trial court's discretion in deciding whether to certify a class action is not without limits and must be exercised within the framework of Civ.R. 23. Id. The trial court must carefully apply the requirements of Civ.R. 23 and conduct a rigorous analysis into whether those requirements have been satisfied. Id.
 {¶ 17} ODI contends that the trial court's findings with regard to class membership and commonality under Civ.R. 23(A) constituted an abuse of discretion. In addition, both defendants claim that the trial court's findings with regard to predominance and superiority under Civ.R. 23(B)(3) constituted an abuse of discretion.
 {¶ 18} The crux of ODI's class membership challenge is whether OHA and OSMA have standing to represent members of their associations as a class. "A party has standing to invoke the jurisdiction of the court if he has, in an individual or representative capacity, some real interest in the subject matter of the action." Ohio Academy of Nursing Homes, Inc. v. Barry
(1987), 37 Ohio App.3d 46, 47.
 {¶ 19} The parties' stipulations define OHA as "a non-profit professional association composed of most of the hospitals in the State of Ohio. OHA represents more than 180 hospitals and 40 health systems throughout Ohio. OHA works on behalf of members through leadership in the development of public policy, representation and advocacy of membership interests, and the provision of services which assist members in meeting the health care needs and improving the health status of the communities they serve."
 {¶ 20} The stipulations further define OSMA, in relevant part, as "an Ohio non-profit professional association of approximately 20,000 private physicians, medical residents and medical students in the State of Ohio. * * * OSMA's purposes are to improve public health through education, to encourage the interchange of ideas among members, to maintain and to advance the standards of medical practice by requiring its members to adhere to fundamental concepts of professional ethics, and to represent the positions of its members before courts, government bodies and agencies."
 {¶ 21} ODI argues that OHA and OSMA lack standing because they do not possess the same interests or claim to have suffered the same injury as all the other members of the class they seek to represent. We disagree. "An association has standing to bring suit on behalf of its members, whether the association is incorporated or unincorporated, when: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Ohio Academy, supra, at paragraph one of the syllabus.
 {¶ 22} In this case, both OHA and OSMA meet the requirements for standing to be parties to the action in a representative capacity on behalf of their members. Individual members of the associations clearly would have standing to sue in their own right. The litigation involves interests germane to the associations' purposes. As noted in the above-quoted stipulations, one of the express purposes of both associations is to advocate the interests of their members. Finally, while some of the relief requested may require the participation of individual members in the lawsuit, that requirement is fulfilled by the notice provision to the individual members and their right to opt out of the class if they so choose. Id.; see, also, Civ.R. 23(C)(2). Accordingly, the trial court did not abuse its discretion in finding that OHA and OSMA have standing to sue on behalf of their members.
 {¶ 23} The commonality requirement of Civ.R. 23(A)(2) requires the presence of "questions of law or fact common to the class." Courts generally afford the commonality requirement permissive treatment. Hamilton, supra, at 77. To find commonality, "[i]t is not necessary that all the questions of law or fact raised in the dispute be common to all the parties. If there is a common nucleus of operative facts, or a common liability issue, the rule is satisfied." Id., citing Marks,
supra, at 202. "The issue of whether any additional questions affecting only individual class members does not enter the class certification analysis until the Civ.R. 23(B) requirement of predominance and superiority is applied." Id.
 {¶ 24} Here, plaintiffs present the common legal claims of negligence and unconstitutional taking of property stemming from a common nucleus of facts relating to the operation of OhioCare and the general contention that defendants mishandled PPC's financial decline. Accordingly, the trial court did not abuse its discretion in finding that plaintiffs satisfied the commonality requirement.
 {¶ 25} As noted, the trial court found that the case could be maintained as a class action pursuant to Civ.R. 23(B)(3). The first requirement for maintaining a class action under Civ.R. 23(B)(3) is that common questions of law or fact predominate over questions concerning only individual members of the class. Performing a "rigorous analysis" of the Civ.R. 23(B)(3) predominance requirement requires an examination of "common" versus "individual" issues. "A predominance inquiry is far more demanding than the Civ.R. 23(A) commonality requirement and focuses on the legal or factual questions that qualify each class member's case as a genuine controversy." Williams v. CountrywideHome Loans, Inc., No. L-01-1473, 2002-Ohio-5499, ¶ 35. Thus, in determining whether common questions of law or fact predominate over individual issues, "it is not sufficient that common questions merely exist; rather, the common questions must represent a significant aspect of the case and they must be able to be resolved for all members of the class in a single adjudication." Schmidt v. Avco Corp. (1984), 15 Ohio St.3d 310,313.
 {¶ 26} A trial court must also be mindful that "[q]uestions going to the merits of the action are not determined at the class certification stage." George v. Ohio Dept. of Human Serv.
(2001), 145 Ohio App.3d 681, 687. Indeed, a court abuses its discretion by determining the merits of a claim at the class certification stage. Id. A court may examine the underlying claims only for the purpose of determining whether common questions exist and predominate and not for the purpose of determining the validity of such claims. Id. Accordingly, the resolution of the predominance question requires only a brief analysis of the claims to be litigated. Shaver v. Standard Oil.Co. (1990), 68 Ohio App.3d 783, 798.
 {¶ 27} In finding that the predominance requirement was met, the trial court stated:
* * * The court finds that it is evident that questions of law or fact common to the members of the class predominate[.] * * * The court is convinced that plaintiffs are correct in their assertion that the common questions of law and fact regarding the claims of negligence and unconstitutional taking of property can be resolved with "one body of evidence, that regarding [defendants] conduct toward PPC." Moreover * * * the defenses asserted to be unique to particular plaintiffs do not defeat predominance at this stage of the court's inquiry. In Hamilton
[v. Ohio Savings Bank (1998), 82 Ohio St.3d 67], the court spoke at length on this question and concluded that individualized inquiries into damages, inducement, reliance and the statute of limitations do not, alone, preclude certification. * * *
(Decision, at 10-11.)
 {¶ 28} Defendants contend that common questions do not predominate and that the case involves a variety of individual inquiries. In particular, defendants submit that a myriad of affirmative defenses, such as statute of limitations, inconsistent contracts, hold-harmless clauses, counterclaims/third-party claims, mitigation of damages, comparative negligence, breach of contract, reliance, and disparate damages, turn on individualized facts, making this case ineligible for class treatment.
 {¶ 29} Upon review of the arguments of the parties and the relevant case law, we agree with the trial court that common fact or law questions predominate over individual questions. For instance, the fact that a statute of limitations may bar the claims of some, but not all, class members does not compel a finding that individual issues predominate over common ones.Hamilton, supra, at 84. "[A]s long as there is a sufficient nucleus of common issues, differences in the application of a statute of limitations to individual class members will not preclude certification under Rule 23(b)(3)." Id. We believe that the same conclusion must logically be reached as to the other defenses pertaining only to some of the class members. Though defendants may have specific defenses against one or more members of the class, the overriding question concerning defendants' conduct toward PPC predominates over these individualized defenses. Accordingly, the trial court's finding that the predominance requirement was satisfied is not an abuse of discretion.
 {¶ 30} The second requirement for maintaining a class action under Civ.R. 23(B)(3) is that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In so determining, "the court must make a comparative evaluation of the other procedures available to determine whether a class action is sufficiently effective to justify the expenditure of judicial time and energy involved therein." Schmidt, supra, at 313, citing Wright Miller, Federal Practice and Procedure (1972), 59 Section 1779.
 {¶ 31} Regarding the superiority requirement, Civ.R. 23(B)(3) enumerates four non-exclusive factors for consideration in determining the desirability of maintaining an action as a class action over other methods of adjudication: "(a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to be encountered in the management of a class action." The trial court found, after consideration of these four factors, that a class action was superior to other available methods for the fair and efficient adjudication of this controversy.
 {¶ 32} Defendants argue that the liquidation proceedings are a superior forum for adjudicating plaintiffs' claims and that the trial court failed to address this issue. To the contrary, the trial court implicitly rejected defendants' argument, noting that "[d]uring the oral hearing on the class certification motion, this court held that the instant case would not be stayed pursuant to R.C. 2743.02(D) because the court is convinced that any collateral recovery in the liquidation proceedings will not fully reimburse plaintiffs for their alleged losses." (June 25, 2004 Decision, at 2, fn. 3).
 {¶ 33} Further, while litigation has already commenced in the liquidation proceedings, those cases — in which neither defendant is a party — will not address whether the defendants were negligent in monitoring PPC's financial status or, if so, whether such actions constituted the taking of plaintiffs' property without just compensation. Further, any recovery by plaintiffs in the liquidation proceedings would apply only to the damages portion of the class action proceedings. As noted by the trial court, the issues of liability and damages have been bifurcated and the court will not proceed with the damages portion of the trial, if it is necessary, until the liquidation proceedings have concluded.
 {¶ 34} We further note that there is no evidence in the record that any class members have filed individual actions against defendants. The Supreme Court of Ohio has noted that "[t]he presence of parallel, individual actions tends to weighagainst class certification, while the lack of parallel lawsuits tends to weigh in favor of certification." (Internal citations omitted; emphasis sic.) Hamilton, supra, at 81. The lack of individual lawsuits relating to plaintiffs' claims against defendants demonstrates that there is not current or anticipated interest in individual plaintiffs pursuing their own separate actions. See Civ.R. 23(B)(3)(b). Accordingly, the trial court's finding that a class action is superior to other methods of adjudication is not an abuse of discretion.
 {¶ 35} For the foregoing reasons, we conclude that the trial court did not abuse its discretion in finding that plaintiffs satisfied each of the requirements for a class action under Civ.R. 23(A) and (B)(3). As such, ODJFS's single assignment of error, as well as ODI's five assignments of error, are overruled. Accordingly, the judgment of the Court of Claims of Ohio granting class certification is affirmed.
Judgment affirmed.
Bryant and Sadler, JJ., concur.
[1] At the time this case commenced, ODJFS was known as Ohio Department of Human Services.